This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**LONA ENGLETT,**

Worker-Appellant,

v. NO. 32,007

**BEE HIVE ASSISTED LIVING and CHURCH MUTUAL INSURANCE COMPANY,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**David L. Skinner, Workers' Compensation Judge**

James Rawley
Albuquerque, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Paul R. Koller
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Lona Englett (Worker) appeals the compensation order denying her benefits. We proposed to affirm in a calendar notice, and Worker has responded with a memorandum in opposition. We have carefully considered Worker's arguments, but we find them unpersuasive. We affirm the decision of the Workers' Compensation Judge (WCJ).

Worker again claims that her refusal to return to work was reasonable. As discussed in our calendar notice, we defer to the expertise of the WCJ. We determine whether there was evidence to support the findings of the WCJ and, if so, we accept the findings of the WCJ. *See Herman v. Miners' Hosp.*, 111 N.M. 550, 552, 807 P.2d 734, 736 (1991). As of August 11, Worker was offered, and accepted, restricted duty at her job, and she was initially assigned to the day shift. Worker testified that she was informed that her schedule would be changed to include three night shifts and two day shifts. After she was given this information, Worker did not return to work. Worker apparently believed that, if any portion of her schedule included working on the night shift, the work restrictions would no longer be in place, and she would be required to perform work that was beyond her capacity and that did not fit within the work restrictions she was given. Contrary to this belief, Worker's supervisor testified that Worker would have continued with light duty until the work restrictions were

removed. There is nothing in the record to support a claim that working the night shift would have resulted in Worker performing duties outside the recommended restrictions. We hold that the WCJ's finding—that Worker's refusal to return to work was not reasonable—was supported by the evidence.

The WCJ found that Worker did not meet the burden of proof to show causation for her alleged secondary mental impairment. Worker again claims that the WCJ erred in finding that the testimony from her expert was equivocal. Worker agrees that the expert was not able to determine causation for Worker's alleged secondary mental impairment to a reasonable degree of medical probability. However, Worker attempts to explain this by pointing to other testimony from the expert, particularly, the expert's recommendation that a psychiatric consultation be considered. The WCJ can reject uncontradicted testimony if the witness is unworthy of belief, the testimony is equivocal or includes inherent improbabilities, or subject to reasonable doubt based on inferences drawn from the circumstances of the case. *See Grine v. Peabody Natural Res.*, 2006-NMSC-031, ¶ 29, 140 N.M. 30, 139 P.3d 190. As noted by Worker, the expert made comments about "being cautious" about causation, "worried" about "something underlying" that might not have come out during the evaluation,"trying to buy a little bit of time" in making a determination about causation, and hoping that some future treatment could provide more information.

[MIO 6] The WCJ determined that the testimony of the expert was equivocal at best and should not be accepted. We affirm that determination and hold that it was not error for the WCJ to conclude that Worker was not entitled to benefits for a secondary mental impairment.

Worker continues to claim that her job involved heavy work rather than medium work. Worker points to the fire plan for assisting residents out of the facility and claims that such a task would involve heavy work. Worker admits that no fire emergency occurred, but speculates that there could have been a situation where a worker would have had to lift over fifty pounds. [MIO 8-9] Worker alleges that assisting residents out of the facility "in a rapid manner" is simply not a medium level of work and is work typically performed by responders to a fire. Worker claims that the fire plan "called for assistance of the elderly out of the first floor windows," and she interprets that plan to require her to stand outside the window and "grab ahold" of the residents and take them out. [MIO 7]

Worker's supervisor emphatically disagreed with Worker's interpretation of the fire plan. [MIO 8] The supervisor testified that "if a patient fell to the floor, she would not be lifted up alone, perhaps helped up, or the fire department called; a judgment call." [MIO 7] Worker's supervisor also testified that most of the tasks performed by staff involved bedside or chair-side assistance, and residents that could

4

not stand and hold themselves up or could not assist when being transferred from a bed to a chair were not allowed to stay in the facility. [MIO8] The WCJ determined that the customary work was performed at medium level, that Worker's capacity was at sedentary level, and that most of the work that would be performed by Worker would be at sedentary to light level with occasional lifting up to fifty pounds. Based on the whole record review, we affirm that determination.

Worker continues to claim that she was entitled to a point for training because she can no longer work as a care giver or companion. [MIO 15] Under NMSA 1978, Section 52-1-26.3(D) (2001), "[a] worker who cannot competently perform a specific vocational pursuit shall be awarded one point. A worker who can perform a specific vocational pursuit shall not receive any points." This has been interpreted to mean that "a worker who, at the time of [her] disability rating, is unable to return to any of [her] former occupations due to [her] disability should receive one point." *Medina v. Berg Constr., Inc.*, 1996-NMCA-087, ¶ 22, 122 N.M. 350, 924 P.2d 1362.

Employer claimed that Worker had previously been employed in jobs involving sedentary to light work. [RP 193] Worker testified that she had been employed for almost one year as a care giver for a man who had an additional care giver to lift him, which eliminated the need for Worker to assist with the man's shower or bath. [MIO 11] In addition, after reaching MMI, Worker was able to act as a care giver and/or

attendant on a voluntary basis for a relative of her boyfriend. [RP 205] Although Worker provides her own account of her pain and inability to lift more than ten pounds, there was sufficient evidence to show that Worker had performed care giver work at sedentary to light level in the past, had voluntarily worked as a care giver after she left her job, and could return to work as a care giver at sedentary to light level at the time of her disability rating. We affirm on this issue.

For the reasons discussed in this Opinion and in our calendar notice, we affirm the WCJ's decision.

**IT IS SO ORDERED.**


_____
**RODERICK T. KENNEDY, Judge**


**WE CONCUR:**


_____
**CELIA FOY CASTILLO, Chief Judge**


_____
**MICHAEL D. BUSTAMANTE, Judge**